FILED
02/25/2025
Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs January 29, 2025

**STATE OF TENNESSEE v. ERIC JOSEPH MATHIS**

**Appeal from the Criminal Court for Knox County**
**Nos. 110691, 113151, 113785, 118415    Steven W. Sword, Judge**

———————————

**No. E2024-00376-CCA-R3-CD**

———————————

The Defendant, Eric Joseph Mathis, was sentenced to a sum of twenty years of supervised probation. After multiple probation violations, the trial court revoked the entirety of the Defendant's probation and ordered him to serve the sentences in the Tennessee Department of Correction. On appeal, the Defendant argues that the trial court abused its discretion in ordering the revocation of his probation because (1) he had treatable substance abuse issues and financial needs that would be better addressed outside of prison and (2) the trial court based its orders on the Defendant's failure to pay restitution without conducting an ability-to-pay hearing. For the following reasons, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

KYLE A. HIXSON, J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and TOM GREENHOLTZ, JJ., joined.

Chelsea C. Moore, Knoxville, Tennessee, for the appellant, Eric Joseph Mathis.

Jonathan Skrmetti, Attorney General and Reporter; George Kirby May, Assistant Attorney General; Charme P. Allen, District Attorney General; and William Bright, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I.    FACTUAL AND PROCEDURAL HISTORY**

Between 2017 and 2021, the Defendant pled guilty by information to offenses in four separate cases. In 2017, he pled guilty to possession with intent to sell more than

one-half gram of cocaine ("case 110691"). Tenn. Code Ann. § 39-17-417(c). In 2018, he pled guilty to theft of property with a value of at least $10,000 but less than $60,000 and to hindering a secured creditor ("case 113151"). *Id.* §§ -14-103, -105(a)(4), -116. Later that year, he pled guilty to criminal simulation ("case 113785"). *Id.* § -14-105(a)(3), -115. Finally, in 2021, he pled guilty to possession of a firearm by a convicted felon ("case 118415"). *Id.* §§ -17-1307(b)(1).

In total, the Defendant received an effective suspended sentence of twenty years. Additionally, the restitution section of the judgments for both counts in case 113151 indicated that the restitution would be determined following a later hearing. The restitution in case 113785 was listed on the judgment as a total amount of $6,883.28 to be paid at a rate of $100 per month. The record on appeal does not contain the transcripts of any later restitution hearing or any restitution orders entered by the trial court.

On February 25, 2022, a violation of probation warrant was issued, alleging that the Defendant had violated the terms of his probation on all four cases for the following reasons: being arrested on February 12, 2022, for the new offense of driving under the influence; admitting to officers that he had consumed alcohol; and endangering himself and the public by choosing to consume alcohol before driving a vehicle. The Defendant was released on his own recognizance on March 21, 2022.

The first amended violation of probation warrant was issued on July 22, 2022. It alleged that the Defendant violated his probation for the second time by being arrested on July 16, 2022, for possession of a weapon as a convicted felon, simple possession of marijuana, and driving while having a revoked license. The amended warrant also stated that the Defendant failed to inform his probation officer of the new arrest and that the Defendant was found in possession of a firearm and marijuana.

The second amended warrant was filed on August 19, 2022, alleging that the Defendant violated his probation for the third time by being arrested for the new offense of public intoxication on August 13, 2022, for failing to inform his probation officer of his new arrest, and for being intoxicated. On April 6, 2023, the Defendant admitted to the allegations contained in the original violation warrant and the two amended warrants and was released on his own recognizance.

The third amended warrant was filed on June 21, 2023, alleging that the Defendant violated his probation for the fourth time by committing the offense of simple possession/casual exchange, failing to inform his probation officer of his new arrest, and

being in possession of illegal drugs. He was subsequently released on his own recognizance on June 29, 2023.

The fourth amended warrant was filed on February 14, 2024, alleging that the Defendant violated his probation for the fifth time by committing the offense of aggravated criminal trespass, being intoxicated, and failing to make any restitution payments since December 20, 2023. On February 22, 2024, the trial court set a $1,000 cash bond in case 113151 and case 113785, but it released the Defendant on his own recognizance in cases 110691 and 118415.

On March 6, 2024, the trial court commenced a probation revocation hearing. At the outset of the hearing, the Defendant admitted to the allegations in the third and fourth amended warrants. Regarding the consequences for the Defendant's violations, the State argued for the full revocation of the Defendant's probation, stating that he had a long criminal history and had violated his probation multiple times. The Defendant argued that "while [he] has had several violations, he has done well for a lengthy period of time," citing his struggle to maintain employment due to various health issues. He also indicated that he had recently been promoted at his job such that he would have a "significant salary" and would be able to make "larger, regular payments than he [had] been able to in the past."

After accepting the Defendant's admission of guilt and hearing the arguments of the parties, the trial court reserved making a decision on the consequences of the violation to March 8, 2024. On that court date, the trial court noted that the Defendant had been on probation for nearly seven years since May 2017, that he had picked up three felony and three misdemeanor convictions since then, that the court had continued to "work with" the Defendant by placing him on enhanced probation and making drug court referrals, and that the Defendant had "picked up ten new violations of probation." The trial court also noted that the Defendant had owed $33,000 in restitution since 2018 and had paid $970 towards the total. The trial court stated, "We've given you more opportunities than I think I've probably given anybody else ever in the past and you haven't been able to take advantage of it."

Following the hearing, the trial court entered four written orders revoking the Defendant's probation on each of the cases. The trial court ordered the Defendant to serve the sentences in the custody of the Tennessee Department of Correction. This timely appeal followed.

## II. ANALYSIS

Appellate courts review a trial court's revocation of probation decision for an abuse of discretion with a presumption of reasonableness "so long as the trial court places sufficient findings and the reasons for its decisions as to the revocation and the consequences on the record." *State v. Dagnan*, 641 S.W.3d 751, 759 (Tenn. 2022). "A trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." *State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010). If a trial court fails to state its findings and reasoning for the revocation on the record, appellate courts may conduct a de novo review if the record is sufficiently developed, or the appellate court may remand the case for the trial court to make such findings. *Dagnan*, 641 S.W.3d at 759 (citing *State v. King*, 432 S.W.3d 316, 324 (Tenn. 2014)).

Probation revocation is a two-step consideration requiring trial courts to make two distinct determinations as to (1) whether to revoke probation and (2) what consequences will apply upon revocation. *Dagnan*, 641 S.W.3d at 757. No additional hearing is required for trial courts to determine the proper consequences for a revocation. *Id.* The trial court's findings do not need to be "particularly lengthy or detailed but only sufficient for the appellate court to conduct a meaningful review of the revocation decision." *Id.* at 759 (citing *State v. Bise*, 380 S.W.3d 682, 705-06 (Tenn. 2021)).

"The trial judge may enter judgment upon the question of the charges as the trial judge may deem right and proper under the evidence adduced before the trial judge." Tenn. Code Ann. § 40-35-311(d)(1). "If the trial judge finds by a preponderance of the evidence that the defendant has violated the conditions of probation and suspension of sentence, then the court may revoke the defendant's probation and suspension of sentence, in full or in part, pursuant to § 40-35-310." *Id*.

Here, the Defendant does not challenge the trial court's determination that he violated his probation. Indeed, the Defendant admitted his violations, and the trial court based its decision to revoke the Defendant's probation, *inter alia*, on the facts that the Defendant obtained felony convictions on multiple occasions since he was placed on probation. *See, e.g.*, *State v. Penny*, No. W2023-00912-CCA-R3-CD, 2024 WL 1803264, at *4 (Tenn. Crim. App. Apr. 25, 2024) (concluding that a trial court acted within its discretion in fully revoking a defendant's probation where the defendant admitted to committing the new criminal offenses of evading arrest, reckless driving, leaving the scene of an accident, and driving on a suspended license).

- 4 -

Rather, the Defendant challenges on appeal the trial court's determination of the consequences for his probationary violations under the second prong of *Dagnon*. Specifically, the Defendant argues that the trial court abused its discretion in this regard for two primary reasons: (1) the Defendant had treatable needs relating to issues such as drug abuse and employment that would be better addressed by programs outside of prison and (2) the trial court revoked the Defendant's probation based, in part, on his failure to pay restitution without first conducting an ability-to-pay hearing.

Insofar as it relates to *Dagnan*'s second prong, the Defendant argues that he had needs that could have been remedied by means less restrictive than confinement. As to this argument, he cites the probation-purpose statute contained in Tennessee Code Annotated section 40-28-101 and argues that the record shows the trial court had not referred the Defendant to substance abuse treatment programs in the past. Even so, "a trial court is not required to order substance-use treatment before fully revoking a suspended sentence where the court also finds that community-based efforts are no longer appropriate or are unlikely to be successful." *State v. Banning*, No. 2022-00188-CCA-R3-CD, 2022 WL 10225186, at *5 (Tenn. Crim. App. Oct. 18, 2022) (emphasis omitted). The trial court acknowledged that it had afforded the Defendant multiple opportunities to comply with the terms of his probation, but the Defendant had not been successful despite nearly seven years of opportunities. The trial court properly exercised its discretion in ordering the Defendant to serve his sentences in TDOC.

The Defendant also avers that the trial court failed to conduct an ability-to-pay hearing prior to revoking the Defendant's probation based on his failure to pay restitution. The Supreme Court of the United States provided that if a state "determines a fine or restitution to be the appropriate and adequate penalty for the crime, it may not thereafter imprison a person solely because he lacked the resources to pay it." *Bearden v. Georgia*, 461 U.S. 660, 667-68 (1983). In keeping with these principles, our supreme court held that when revocation is based on nonpayment a trial court must determine that a defendant willfully refused to pay or failed to make a bona fide effort to acquire the resources to pay. *State v. Dye*, 715 S.W.2d 36, 40-41 (Tenn. 1986). This court has further provided that willfulness is not required to be shown where the trial court bases revocation on violation of other material terms of probation. *See, e.g.*, *State v. Lashley*, No. M2014-00733-CCA-R3-CD, 2015 WL 866956, at *5-6 (Tenn. Crim. App. Feb. 27, 2015); *State v. Greene*, No. E2010-02495-CCA-R3-CD, 2011 WL 5827245, at *3 (Tenn. Crim. App. Nov. 18, 2011).

The record supports, and the Defendant concedes in his appellate brief, that the trial court based its decision to revoke his probation on violations other than the Defendant's

failure to pay restitution, including the Defendant's commission of new offenses, intoxication, and possession of drugs. Because the Defendant violated other material terms of his probation, the trial court's determination of his ability to pay restitution was not required. *See Lashley*, 2015 WL 866956, at \*5-6. The Defendant is not entitled to relief.

### III.    CONCLUSION

Based on the foregoing and the record as a whole, we affirm the judgments of the trial court.

 s/ Kyle A. Hixson
KYLE A. HIXSON, JUDGE